**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 15-3209

_____

RAYMOND O'BLENIS,
                    Appellant

v.

NATIONAL ELEVATOR INDUSTRY PENSION PLAN; INTERNATIONAL
UNION OF ELEVATOR CONSTRUCTORS LOCAL UNION NO. 1;
MICHAEL RIEGGER; JOHN DOES 1-10; PLAN ADMINISTRATOR

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.N.J. No. 2-13-cv-05842)
District Judge:  Honorable Stanley R. Chesler

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 24, 2016
Before:  JORDAN, BARRY and VAN ANTWERPEN, <u>Circuit</u> <u>Judges</u>

(Filed: March 25, 2016)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Raymond O'Blenis appeals from an order of the United States District Court for the District of New Jersey, which granted the Defendants' summary judgment motions. We will affirm the District Court's judgment.

Because the history and facts of the case are thoroughly reviewed in the District Court's well-reasoned opinion, we will limit our discussion to facts especially pertinent to our decision. O'Blenis was for many years a member of the International Union of Elevator Constructors of New York and New Jersey, Local One ("Local One"), and participated in its pension plan. O'Blenis eventually had to take a non-union job, requiring him to resign from Local One. O'Blenis called Local One to inform it of his decision to resign, and he spoke with Michael Riegger, Local One's secretary-treasurer. According to O'Blenis, Riegger informed him that if he retired, he would receive "two thousand eight hundred something dollars" per month in pension benefits. Riegger also gave O'Blenis the telephone number for the pension plan's benefits office.

O'Blenis applied for a pension, and despite receiving forms that said "Pension Type: EARLY VESTED" and listed "Type Reduc." of 50% or over with corresponding calculated amounts, he believed that he would be receiving the "Normal Benefit" of over $2,800 (listed at the top of the forms). After his application was complete, O'Blenis was sent a more explicit form showing that his monthly benefit with "straight life" calculation would be $1,468.30, minus health insurance deductions, for a total of $672.30 per month. He acknowledged receiving this form, but still believed he would be getting over $2,800 per month (once again, the "normal benefit" listed at the top of the form). He requested

2

direct deposit of the checks, and he did not receive bank statements or check his bank balance until months later when he had trouble paying his mortgage.

After unsuccessful administrative appeals, O'Blenis filed a counseled complaint against Local One, Riegger, and the National Elevator Industry Pension Plan and its administrator, claiming breach of fiduciary duty and equitable estoppel. O'Blenis did not claim that the benefits he received were improperly calculated under the plan, but claimed that the Defendants "materially misrepresented his status with respect to the amount of his monthly pension benefit," that the misrepresentations were made by fiduciaries, and that he "relied upon this advice in making the decision to retire when he did." He also alleged that there were "extraordinary circumstances" warranting relief. Complaint, Dkt. #1 at 6.

Following discovery, the District Court granted the Defendants' two summary judgment motions. O'Blenis filed a timely, pro se appeal.

We review the District Court's order granting summary judgment de novo and review the facts in the light most favorable to the nonmoving party. Burns v. Pa. Dep't of Corr., 642 F.3d 163, 170 (3d Cir. 2011). We will affirm if our review reveals that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

We have recognized a cause of action for equitable estoppel under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). See Curcio v. John Hancock Mut. Life Ins. Co., 33 F.3d 226, 235 (3d Cir. 1994). A plaintiff seeking equitable relief in an ERISA case must

3

establish: (1) a material misrepresentation or fraudulent concealment; (2) reasonable and detrimental reliance upon the misrepresentation or concealment; and (3) extraordinary circumstances. Pell v. DuPont, 539 F.3d 292, 300 (3d Cir. 2008).

Assuming for the sake of argument that Riegger made a material misrepresentation to O'Blenis regarding what the amount of his pension would be,[1] we agree with the District Court that O'Blenis could not show reasonable reliance on that misrepresentation. First, O'Blenis had no reason to believe that Riegger had the authority to bind the pension plan. In fact, O'Blenis acknowledges that Riegger gave him the phone number to call the pension plan, implying that O'Blenis needed to contact someone else. Second, the plan sent O'Blenis two "calculation/option" sheets reflecting that O'Blenis would receive a reduced pension, followed by a third document that informed O'Blenis of the exact amount that he would receive monthly. While O'Blenis may have misread the forms or misunderstood the forms, we cannot find that he was "reasonable" in relying on the one line on those forms that stated the "normal benefit" where the rest of each form went into detail about his reduced pension. Because

---

[1] Riegger testified in his deposition that he did not tell O'Blenis how much he would receive as a pension, but only gave him the telephone number for the pension plan. As we view the evidence in the light most positive to the opposing party, we will assume for sake of the analysis that Riegger informed O'Blenis of the amount. See Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014).

4

O'Blenis did not raise a material issue of fact regarding his reasonable reliance, the

District Court properly awarded summary judgment on the equitable estoppel claims.[2]

To the extent O'Blenis's complaint raises a separate claim of a breach of fiduciary

duty under ERISA, summary judgment is appropriate because there is no genuine dispute

that any fiduciary under the plan or any person who acted with apparent authority of the

plan misrepresented any plan information. See Burstein v. Ret. Account Plan For Emps.

of Allegheny Health Educ. & Research Found., 334 F.3d 365, 384 (3d Cir. 2003) (setting

forth elements). Aside from bald statements that Riegger had apparent authority to act

for the plan, O'Blenis offers what he characterizes as a "pension claim denial" letter

written by Leonard Legotte, the president/business manager of Local One. Presumably

his argument is that Legotte acted for the plan, and thus all Local One officials could act

for the plan. But Legotte's letter, which apparently was in response to O'Blenis's inquiry

about his pension calculation, explicitly states that "Local No. 1 does not control or

---

[2] We need not reach the other prongs of the test, but we note that there is some question as to whether, even assuming he were *reasonable* in relying on Riegger's statement, O'Blenis relied on the statement to his *detriment*. See Dist. Ct. Op. at 13-14 (noting O'Blenis's video statement in the record stating "that he would have had to 'beg[], borrow[], [and/or] steal' to hold off on withdrawing his benefits," suggesting that necessity drove the timing of his pension withdrawal rather than misstatement of his benefit amount). And we note that even if O'Blenis had met all of the prongs of the equitable estoppel test, the District Court might have been justified in denying relief due to O'Blenis's lack of diligence in confirming the information he allegedly received from Riegger with either the pension plan or his own bank. Cf. Pace v. DiGuglielmo, 544 U.S. 408, 419 (2005) (stating in context of equitable tolling of a period of limitations that "petitioner's lack of diligence precludes equity's operation").

administer [the plan] and cannot correct the agreement which you made with the Pension Plan when you determined to retire at age 57." App. 1633a.

For these reasons and those stated by the District Court, summary judgment was appropriate. We will thus affirm the District Court's judgment.